Argued February 4, reversed and remanded February 24, 1966

# HERRON *v.* ROSE CITY TRANSIT COMPANY

411 P. 2d 445

*William C. Grant,* Portland, argued the cause for appellant. With him on the brief was Ben T. Gray, Portland.

*Arden E. Shenker,* Portland argued the cause for respondent. On the brief were Tooze, Powers, Kerr, Tooze & Peterson, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, HOLMAN and LUSK, Justices.

HOLMAN, J.

Plaintiff brought an action against defendant for damages occurring as a result of personal injuries suffered from a fall at a designated bus stop at the intersection of northwest 23rd and Everett Streets in the city of Portland. She contended defendant was negligent in stopping its bus an unreasonable distance from the curb. Plaintiff has appealed from an order of involuntary nonsuit at the completion of her case.

The only issue raised by defendant's motion for an involuntary nonsuit and the only issue considered here is whether there was any substantial evidence of negligence on the part of defendant as alleged by plaintiff. Plaintiff states her position as follows:

"A bus company owes a duty to a prospective passenger to exercise reasonable care for her safety, and the creation of an unreasonable, foreseeable risk of harm to the prospective passenger, waiting at a bus stop, in getting to the bus is a breach of that duty."

The following is a summary of the evidence most favorable to plaintiff. The weather was bad. There was snow and thick ice everywhere. The street was

rutted and rough with frozen snow and ice. Plaintiff, a woman 69 years of age, was waiting for defendant's bus at the bus stop on the west side of 23rd Street just north of its intersection with Everett Street. Defendant's bus approached the stop traveling south on 23rd Street. The driver observed plaintiff waiting for his bus from a half block away. There were no vehicles parked on the west side of 23rd Street to the north of plaintiff for a distance of 62 feet. The bus was 34 feet 4 inches long. The bus was stopped for plaintiff a distance of from six to eight feet out from the curb and its door opened for her. Plaintiff stepped off the curb and walked toward the open bus door when she slipped and fell on the ice, breaking her hip and striking her head on the bus.

■ The jury could have found from the above evidence that the bus driver could have stopped the bus at the curb, thus making it unnecessary for plaintiff to traverse the rutted snow and ice between the curb and the bus. Under these conditions could the jury have found that the defendant owed a duty to plaintiff to pull the bus to the curb so that she might board it there?

In *Lewis v. Pacific Greyhound Lines,* 147 Or 588, 34 P2d 616 (1934), plaintiff was discharged from a bus on the right hand shoulder of the highway opposite the bus station and was injured when struck by another vehicle while walking across the highway to the station. The court held there was no liability as plaintiff was allowed to alight from the bus in a safe place and that if, thereafter, he voluntarily walked into a situation of danger it was not the bus company's responsibility. In discussing the duty of the bus com-

pany to furnish a safe place to alight, the court said as follows, at page 592:

"* * * An automobile bus is able to move or stop in the street at the will of the driver. Ordinarily stations are not maintained by such carriers. The safety of the place afforded the passenger for alighting is entirely within the control of the driver, and passengers are discharged to suit their convenience. The degree of care to be exercised must be commensurate with the danger involved. To discharge a passenger on a highway where he would be subject to the dangers of vehicular traffic would clearly not meet the degree of care which the law exacts."

In the present case the passenger was seeking admission to the bus instead of debarking, and the danger was from slipping on the rutted frozen ice and snow and not from passing traffic. However, while the factual situation in *Lewis* was dissimilar to the instant case, logically the language is equally applicable.

"A public carrier must discharge its passengers at a reasonably safe place." *Smith v. Portland Traction Co.,* 226 Or 221, 229, 359 P2d 899 (1961), and cases there cited.

As stated previously, no logical reason exists why a like rule should not apply when prospective passengers seek to board the conveyance.

"A common carrier is not responsible for the condition of the street where passengers alight and breaches its duty to discharge passengers in a reasonably safe place only where it knows or should have known of defects in the street." *Smith v. Portland Traction Co.,* supra, at page 232.

In *Smith,* the plaintiff was discharged from the bus on a sloping street which was "wrinkled" in waves of

one-quarter to one-half inch high. There was no proof that the defendant knew of the "wrinkles." The court held there was no liability.

■ If a common carrier invites a prospective passenger to come aboard under circumstances known or which in the exercise of reasonable care should have been known to the carrier to be unnecessarily hazardous to the prospective passenger, and where such hazardous circumstances could be avoided or minimized by the carrier by action not inconsistent with efficient public service, it has not exercised proper care for the safety of the prospective passenger.

This was only a bus stop and not a bus loading zone where parking was restricted. Under such circumstances, we do not imply that the defendant had any duty to allow plaintiff to board at the curb if there were cars parked at the stop, or if there was any other condition, for which defendant was not responsible, making it impractical for the bus to be pulled to the curb.

Defendant argues that it is not responsible for nor did it have control over the condition of the street. This begs the issue. The question is not whether defendant had control of the condition of the street but rather, taking into consideration the condition of the street as it existed for the use of both bus and passenger, did defendant fail to exercise proper care for plaintiff's safety by not pulling to the curb. We believe that under the evidence the jury could have so found.

For other cases holding that a public carrier is negligent for conduct similar to defendant's in loading or debarking passengers, see *Oklahoma Ry. Co. v. Wilson,* 204 Okla 488, 231 P2d 688 (1951); *Young v.*

*Jamaica Buses, Inc.,* 262 App Div 860, 28 NYS2d 197 (1941) ; *Schwartz v. Brooklyn & Queens Transit Corp.,* 264 App Div 905, 36 NYS2d 70 (1942) ; *Cordes v. Surface Transp. Corp.,* 40 NYS2d 878 (Sup. Ct. 1943).

The trial court was in error in granting the judgment of involuntary nonsuit. The judgment is reversed and the case is remanded for a new trial.